IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| D. BRUCE OLIVER,<br><br>　　　　　　Plaintiff,<br>v.<br><br>DEPUTY LARRY G. NIELSEN, DEPUTY BRENT E. PETERS, DEPUTY KEVIN P. FIELDING, DEPUTY M. DAVIS, DEPUTY ALAN BLACK, JOHN DOES 1-10, JANE DOES 1-10, BLACK CORPORATIONS AND/OR ENTITIES 1-10,<br><br>　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:16cv00155-JNP-BCW<br><br>Judge Jill N. Parrish<br>Magistrate Judge Brooke Wells |

This matter is before the court on the Motion for Summary Judgment (ECF No. 49) filed by Deputy Larry G. Nielson, Deputy Brent E. Peters, Deputy Kevin P. Fielding, Deputy M. Davis and Deputy Alan Black (collectively "Defendants") against Plaintiff D. Bruce Oliver ("Oliver") on the two claims asserted in his Third Amended Complaint for unlawful arrest and unlawful seizure of property in violation of 42 U.S.C. §§ 1983 and 1988. Pursuant to DUCivR 7-1(f), the court determined oral argument is not necessary. Having reviewed the pleadings and memoranda on file, the court now finds that Defendants are entitled to qualified immunity on both of Oliver's claims. Accordingly, the court GRANTS Defendants' motion for summary judgment.

## FACTUAL BACKGROUND

### A. Disputed Material Facts

As a preliminary matter, the court expresses concern regarding the briefing in this case. Defendants cited 107 facts in their "Statement of Undisputed Material Facts," even though "[o]nly

those facts necessary to decide the motion should be included in this section."[1] Oliver's response to Defendants' statement of facts likewise did not comport with the requirements set forth in the local rules. The court's local rule requires non-moving parties to address the statement of facts as follows:

> A restatement of each fact the opposing party contends is genuinely disputed or immaterial, a concise statement explaining why the fact is disputed or immaterial, and a citation with particularity to the evidence upon which the non-moving party relies to refute any fact . . . . The non-moving party should not restate all of the moving party's statement of facts and should only respond to those facts for which there is a genuine dispute of material fact.[2]

Here, Oliver restated and responded to all 107 of Defendants' facts rather than only addressing those facts he genuinely disputes. Oliver admitted 17 of Defendants' facts, responded "irrelevant" to 64 facts (without providing any explanation why those facts are immaterial),[3] and provided commentary and/or argument to 22 facts without expressly disputing any of them.[4] At most, Oliver only actually disputed the following facts: ¶¶ 61, 78, 91, and 100. Upon reviewing the citations to the record provided by Oliver to refute these facts, the court did not find any support for a genuine dispute. Although Oliver argues "every material and genuine issue is disputed,"[5] the court concludes there are no genuine disputes as to any material fact.

---

[1] DUCivR 56-1(b)(3).

[2] DUCivR 56-1(c)(3).

[3] *See* e.g. Opp'n Mot. S.J., Responses to Statements of Facts ¶¶71-75, and 102-107, ECF No. 57.

[4] An example of facts that Oliver objects to and deems "irrelevant" are facts ¶¶ 17-20, 24-27, and 29–30. These facts describe the "altercation" that took place outside the courtroom and formed the basis for Oliver's arrest. Oliver objects on the grounds that there was "no altercation," but this is clearly contradicted by the surveillance video. *See* ECF No. 50-4, filed conventionally.

[5] *See* e.g. Opp'n Mot. S.J. at 21.

B. **Relevant Facts**

1. *Oliver's Arrest for Disorderly Conduct.*

On June 25, 2012, Oliver attended a Department of Child & Family Service (DCFS) hearing with his son Davis Oliver and his daughter-in-law DeAnn Oliver at the Farmington District Courthouse.[6] After the hearing, Oliver followed a DCFS employee, Collen Tasker (Tasker) to the parking lot of the courthouse and asked Tasker to let him take his granddaughter, a minor in DCFS custody.[7] When Tasker declined to let Oliver take the minor, Oliver initiated a verbal altercation that lasted over five minutes.[8] According to Tasker, Oliver raised his voice, and the situation was "intense" and "uncomfortable."[9] Oliver continued talking to Tasker for almost three minutes after officers arrived at the scene. Notably, when Oliver first saw the officers, he turned around and started to walk away, but then turned around and continued the heated discussion with Tasker.[10] One of the officers who assisted in the arrest testified that the situation was "chaotic" and when he arrived at the scene he could hear Oliver yelling at a distance of fifteen feet.[11] Tasker also testified that the situation "became very chaotic" and the child in DCFS custody was "upset and crying."[12] The arresting officer testified that Oliver was "loud and obnoxious" towards the officers at the scene.[13] Eventually, Oliver was arrested for disorderly conduct.[14]

---

[6] ECF No. 50-1.

[7] ECF No. 50-5 at 4-5.

[8] There is video surveillance footage that shows Plaintiff agitated, pacing and waiving his arms, as Tasker is trying to respond to him. *See* ECF No. 50-4, filed conventionally.

[9] ECF No. 50-5 at 5.

[10] ECF No. 50-4.

[11] ECF No. 50-3 at 6, 18.

[12] ECF No. 50-5 at 6-7.

[13] ECF No. 50-3 at 17.

[14] ECF 50-3 at 6.

## 2. Inventory of Oliver's Property

When Oliver was booked into jail he had in his possession a wallet containing cash and other items.[15] Oliver signed a Property Sheet that accurately listed all of the items except for the cash Oliver testified he had in his wallet at the time of the arrest.[16] Oliver testified the cash was not listed on the Property Sheet and that he reported that fact to an officer.[17] Oliver also testified he was not present when the cash was removed from his wallet.[18] Oliver testified that all the property listed on the Property Sheet was returned to him when he was released from jail.[19] He also signed an Inmate Release Sheet acknowledging he received $171.90 that had been placed on a debit card and that this was the amount held for him by the Davis County Correctional Facility during his incarceration.[20] Oliver also testified that three or four bills of special interest were all returned upon his request.[21] Finally, Oliver acknowledged he has never used the debit card because he does not use debit cards "of any sort at any time."[22]

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23] In reviewing a motion for summary judgment, the court is required to construe all facts and reasonable inferences

---

[15] ECF No. 50-2 at 32.

[16] ECF No. 50-9.

[17] ECF No. 50-2 at 32.

[18] *Id*. at 36.

[19] *Id.* at 33.

[20] ECF No. 50-10.

[21] ECF No. 50-2 at 34 (the bills included one stamped "White Power" and one stamped "Reich" and "Yen Obama").

[22] ECF No. 50-2 at 38.

[23] Fed. R. Civ. P. 56(a).

in the light most favorable to the nonmoving party.[24] But, when Defendants raise the defense of qualified immunity, the summary judgment analysis proceeds differently.[25]

"[W]hen a defendant raises [a] qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test."[26] The plaintiff must show: "(1) the defendant's violation of a constitutional right; and (2) the 'infringed right at issue was clearly established at the time of the allegedly unlawful activity such that a reasonable law enforcement officer would have known that his or her challenged conduct was illegal.'"[27] "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing 'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'"[28] Because Oliver has failed to meet this burden on either of his claims, the court concludes that Defendants are entitled to qualified immunity and grants summary judgment in their favor.

## ANALYSIS

### A. Defendants are Entitled to Qualified Immunity on the First Cause of Action

In his first cause of action, Oliver alleges that the "unlawful search and seizure of [Oliver] and his property committed under color of law" by Deputies Nielson, Davis, and Black ("Arresting

---

[24] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[25] *See Nelson v. McMullen*, 207 F.3d 1202, 1205–06 (10th Cir. 2000); *see also Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)) (Because "[q]ualified immunity is designed to shield public officials from liability," the issue must be resolved at "the earliest possible stage in litigation.").

[26] *Nelson*, 207 F.3d at 1206.

[27] *Aragon v. City of Albuquerque*, 423 F. App'x 790, 792 (10th Cir. 2011) (quoting *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007)).

[28] *Nelson*, 207 F.3d at 1206 (quoting *Albright,* 51 F.3d at 1535); *see also Aragon*, 423 F. App'x at 792 ("Failure on either element, taken in whatever order, is fatal to the plaintiff's cause.").

Deputies")²⁹ deprived him of "his right to be secure in his person against unreasonable seizure of his person, in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States."³⁰ Although not entirely clear from the language in his Third Amended Complaint, Oliver appears to be challenging the legality of his arrest on the grounds that the Arresting Deputies lacked probable cause, arrested him under the wrong statute, and placed him under custodial arrest for a crime without a jail sentence. For the reasons articulated below, Oliver's three theories all fail to meet his burden of establishing that the Arresting Deputies violated a constitutional right, and they are therefore entitled to qualified immunity on his first cause of action.

   *1. Defendants Had Probable Cause*

The Arresting Deputies had probable cause to arrest Oliver if "under the totality of the circumstances, a reasonable person would believe that an offense has been committed by the person arrested."³¹ Oliver was arrested for Disorderly Conduct under Utah Code Annotated section 76-9-102.³² The statute is comprised of two subsections that set forth different types of conduct constituting disorderly conduct. Subsection (a) provides, in relevant part, that "[a] person is guilty of disorderly conduct if: (a) the person refuses to comply with the lawful order of a law

---

²⁹ It is undisputed that Deputies Nielson, Davis, and Black all assisted in Oliver's arrest and detained Oliver prior to transferring him to the Davis County Jail. Although Oliver does not specify against which Defendants he asserts his First Cause of Action, in the heading to his Third Amended Complaint, Oliver makes clear that Deputies Fielding and Peters are joined as to the second cause of action only. *See* Third Am. Compl. at 1.

³⁰ Third Am. Compl. at ¶ 24.

³¹ *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012) (quoting *United States v. Martin,* 613 F.3d 1295, 1302 (10th Cir.2010)).

³² *See* ECF 50-1, Deputy Incident Report at 3, 6, 9–10, 12, 14. The Deputy Incident Report consistently states that Oliver was arrested on June 25, 2012 for "Disorderly Conduct;" however, the specific statute listed varies between Utah Code Ann. § 76-9-102 and § 76-10-1505. *See e.g.* ECF 50-1 at 3, 9, and 14. Disorderly Conduct is a class C misdemeanor under both statutes, but under § 76-10-1505, the conduct must occur on a public bus. Because no bus was involved, it is clear that the officer intended to book Oliver under § 76-9-102.

enforcement officer to move from a public place[.]"[33] Subsection (b) provides, in relevant part, that a person is guilty if "(b) intending to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, the person: (i) engages in fighting or in violent, tumultuous, or threatening behavior" or "(ii) makes unreasonable noises in a public place[.]"[34] A "public place" is defined, in relevant part, as "any place to which the public or a substantial group of the public has access and includes but is not limited to streets, highways, and the common areas of . . . public buildings and facilities[.]"[35]

Here, the record shows Oliver was involved in an "intense" verbal altercation with a DCFS employee,[36] asked to take a minor who was in DCFS custody,[37] raised his voice at the DCFS employee,[38] and was "loud" and "obnoxious" to the deputies when they responded to the scene.[39] Oliver additionally refused to comply with the deputies' orders[40] and this behavior occurred in the parking lot outside of the courthouse in the presence of several people.[41] This evidence is sufficient to constitute Disorderly Conduct as set forth in Utah Code Annotated section 76-9-102.

The facts here establish that Oliver created a situation that caused alarm (Oliver attempting to take a minor in DCFS custody), Oliver engaged in threatening behavior (Oliver was visibly upset, raised his voice at a DCFS employee and was obnoxious to the responding officers), and

---

[33] Utah Code Ann. § 76-9-102(1)(a).

[34] *Id.* § 76-9-102(1)(b).

[35] *Id*. § 76-9-102(2).

[36] ECF No. 50-5 at 5.

[37] *Id*.

[38] *Id.*

[39] ECF No. 50-3 at 7, 17.

[40] *Id.* at 6-7; *see also* ECF No. 50-1.

[41] ECF No. 50-5 at 4–5.

that Oliver made unreasonable noise in a public place (the confrontation occurred in the parking lot of the courthouse). Utah courts have consistently held that loud yelling constitutes "unreasonable noises" for purposes of the disorderly conduct statute.[42] Likewise, Utah courts have upheld convictions for disorderly conduct where the defendant, in addition to yelling, either fails to comply with orders or "grudgingly" complies.[43] Based on the undisputed facts, the record shows that the Arresting Deputies had probable cause to arrest Oliver for Disorderly Conduct.

### 2. *Officer's Mistaken Reference to the Incorrect Statute Did Not Invalidate the Arrest*

Oliver next argues that his arrest violated the Fourth Amendment because the arresting officer identified the incorrect statute on his citation. The court disagrees. While it is true that section 76-10-1506 of the Utah Code (Bus Passenger Safety Act) was erroneously cited in Oliver's arrest report alongside section 76-9-102,[44] the error is a non-issue. First, the Deputy Incident Report clearly lists Utah Code section 76-9-102 as the basis for the arrest.[45] Second, "'[a]n arrest is not invalid under the Fourth Amendment simply because the police officer[s] subjectively

---

[42] *See Layton City v. Tatton*, 264 P.3d 228 (Utah Ct. App. 2011) ("The record was replete with evidence that Defendant was not just using expletives, harsh language, and vulgarities but that she was also doing so at high volume . . . . This readily qualifies as unreasonable noise[] in a public place." (internal quotations omitted)); *see also State v. Lambeth*, 2005 UT App 289, 2005 WL 1476893, at *2 (unpublished) (finding probable cause to arrest appellant for disorderly conduct under Utah Code Ann. § 76-9-192 where defendant was loudly yelling profanities).

[43] *See Orem City v. Bovo*, 76 P.3d 1170, 1171 (Utah Ct App. 2003) (finding probable cause to arrest for disorderly conduct where "Defendant's behavior was belligerent and aggressive," and "he grudgingly complied with the officers' requests"); *see also State v. Griego*, 933 P.2d 1003, 1005, 1008–09 (Utah Ct. App. 1997) (finding probable cause for disorderly conduct where defendant "refused [an officer's] request in vulgar and obscene terms" and "[d]espite the officers' continued requests to defendant to 'calm down'. . . , defendant continued to struggle and yell obscenities, drawing the attention of several neighbors.").

[44] The Deputy Report cites to Utah Code Ann. §§ 76-9-102 and 76-10-1506. ECF No. 50-1. Meanwhile, the Citation and Probable Cause Affidavit in Plaintiff's underlying criminal case cites to section 76-10-1506. ECF Nos. 50-7 and 50-8. Deputy Nielsen testified that he identified this statute because it was the one listed in his Utah Highway Patrol Handbook. ECF No. 50-3 at 9.

[45] *See supra* note 32.

intended to base the arrest on an offense for which probable cause is lacking, so long as the circumstances, viewed objectively,' warrant arrest for some offense."[46] In fact, the Supreme Court has "rejected a reading of the Fourth Amendment that would require a connection between the offense establishing probable cause and the offense identified [by the arresting officer] at the time of the arrest."[47] Because Defendants had probable cause to arrest Oliver for Disorderly Conduct under section 76-9-102, his arrest did not violate the Fourth Amendment.

### 3. *Custodial Arrest was not Unlawful*

Plaintiff also claims his arrest was unlawful because he was arrested for an infraction which does not carry a jail sentence. This argument fails because "when police officers have probable cause to believe a person has committed a crime in their presence, the Fourth Amendment permits a warrantless arrest . . . regardless of whether the crime qualifies as an arrestable offense under applicable state law."[48] The Supreme Court has specifically rejected the argument that the Fourth Amendment would forbid "custodial arrest, even upon probable cause, when conviction could not ultimately carry any jail time."[49] Because the Arresting Deputies had probable cause for Oliver's warrantless, custodial arrest, they are entitled to qualified immunity on Plaintiff's first claim.[50]

---

[46] *United States v. Petersen*, 525 F. App'x 808, 810 (10th Cir. May 22, 2013) (alteration and emphasis in original) (quoting *Morris*, 672 F.3d at 1192–93).

[47] *United States v. Turner*, 553 F.3d 1337, 1344 (10th Cir. 2009) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152–53 (2004)).

[48] *Id.* at 1345 (citing *Virginia v. Moore*, 553 U.S. 164, 176 (2008)).

[49] *Atwater v. City of Lago Vista*, 532 U.S. 318, 346 (2001).

[50] Because the court concludes that Defendants had probable cause, it follows that a reasonable officer would have believed that he had probable cause. Thus, Oliver's claim fails on both prongs of the "two-part test." *See Morris*, 672 F.3d at 1194 ("When a warrantless arrest is the subject of a § 1983 action, the arresting officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to make the arrest."); *see also Aragon*, 423 F. App'x at 792–93 (reaching the second prong but not the first).

**B. Defendants are Entitled to Qualified Immunity on the Second Cause of Action**

Next, Oliver alleges that his Fourth Amendment right to be free from unreasonable search and seizure was violated by the search and seizure of his property during booking and by the fact that his property was not returned to him upon his release.[51] But these claims also fail for the reasons articulated below. As Oliver has failed to assert that Deputies Peters and Fielding violated a constitutional right, they are therefore entitled to qualified immunity on his second claim.

### *1. Oliver Fails to Allege that the Identified Defendants Were Personally Involved*

Oliver asserts his second cause of action against Deputy Peters and Deputy Fielding. But "liability under § 1983 must be based on [a] defendant's personal involvement in the alleged constitutional violation."[52] Thus, "a complaint must allege that each defendant, through his own actions, violated the constitution."[53] In his Third Amended Complaint, Plaintiff alleges as follows:

> [W]hen [Oliver] was in jail, the Deputies there, took his property from him in preparation for booking him into jail, which included an amount of money of about $200.00. . . . That when [Oliver] bailed out, some of his property was returned to him; however, the Davis County Jail and Davis County Sheriff's Office has never returned, almost all of the money seized from him.[54]

During his deposition, Oliver testified that he notified the officers who booked him that property was missing on the property sheet.[55] When asked "Who did you tell?" Oliver responded "Whoever was booking me. I don't know their name."[56] Oliver later testified he was not present when the

---

[51] Third Am. Compl. at ¶¶ 28–30.

[52] *Mayfield v. Harvey Cty. Sheriff's Dep't*, 732 F. App'x 685, 688 (10th Cir. 2018), *cert. denied,* No. 18-7163, 2019 WL 660076 (U.S. Feb. 19, 2019) (quoting *Schneider v. City of Grand Junction Police Dep't,* 717 F.3d 760, 768 (10th Cir. 2013)).

[53] *Id.*

[54] Third Am. Compl. at ¶¶ 18-20.

[55] ECF No. 50-2 at 32–33.

[56] *Id.* at 33.

property was taken out of his wallet.[57] Based on Oliver's pleading and own testimony, there is no evidence on the record that Deputies Peters and Fielding were personally involved with the seizure of Oliver's property.

### 2. *The Search Incident to Arrest was Lawful*

In addition to Oliver's failure to properly plead the facts to establish Deputies Peters and Fielding's involvement, his claim also fails to defeat the Deputies' defense of qualified immunity because the search and seizure of Oliver's property incident to his arrest was not unlawful. As discussed above, the arrest for Disorderly Conduct was supported by probable cause and thus was lawful. Therefore, Defendants were entitled to perform a search incident to the arrest. "[I]n the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."[58]

### 3. *The Seizure of Oliver's Property was Temporary and Lawful*

Oliver's only remaining challenge to the constitutionality of the search and seizure of his property is that Defendants improperly seized his property by failing to return it upon his release. But contrary to Oliver's allegation,[59] his property was not permanently seized, nor did the temporary seizure violate the Fourth or Fourteenth Amendments. The undisputed evidence in the record establishes Oliver's property was inventoried when he was booked into jail and returned to him upon his release.[60] It is undisputed Oliver received all of the property listed on the Property Sheet, three bills with significant value to him, and a debit card with available funds in the amount

---

[57] *Id.* at 36.

[58] *See United States v. Robinson*, 414 U.S. 218, 235 (1973).

[59] Third Am. Compl. at ¶ 30.

[60] ECF No. 50-9.

11

of $171.90.[61] Oliver does not challenge the fact that he received a debit card or the amount on that debit card,[62] but he continues to assert that Deputies Peters and Fielding improperly failed to return his money because he received a debit card rather than cash. But Oliver cites no authority for the proposition that returning his money in the form of a debit-card violates clearly established constitutional rights.[63] Under these facts, Oliver has failed to show he was deprived of any property, and Deputies Peters and Fielding are therefore entitled to qualified immunity on Oliver's second cause of action.

## CONCLUSION

The court concludes that Deputies Nielson, Peters, Fielding, Davis, and Black are entitled to qualified immunity on both counts and thus Oliver's claims fail as a matter of law. Accordingly, the court GRANTS Defendants' motion for summary judgment (ECF No. 49) and ORDERS that judgment in the case be entered in favor of Defendants, that Oliver's claims be dismissed with prejudice, and that the clerk of court close the case.[64]

DATED March 26, 2019.

BY THE COURT

Jill N. Parrish
United States District Court Judge

---

[61] ECF No. 50-2 at 34; and 50-10.

[62] *Id.* at 35 ("I don't recall the amount but [$171.90] sounds close.").

[63] In fact, when faced with this issue, the Court of Appeals for the Eighth Circuit held that returning money that was seized as cash in the form of a debit card does not "trigger due process protections" because "the distinctions between cash and the cards are not constitutionally significant." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 931 (8th Cir. 2016).

[64] Although Oliver asserts his First Cause of Action against all listed defendants including "John Does," "Jane Does," and "Black Corporations," the same analysis that applies to the Arresting Deputies would apply to any other defendant. The court may therefore dismiss the claim entirely.